UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JOHNNY WORD, DORINDA WORD,
his wife, individually and as
parents and natural guardians
of minors K.W., A.W., and B.W.,

        Plaintiffs,

                       Case No. 8:07-cv-1513-T-33TGW

v.

ILLINOIS UNION INSURANCE
COMPANY,

        Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to
Plaintiffs' motion for partial summary judgment (Doc. # 21),
which was filed on June 25, 2008. On July 11, 2008,
Defendant filed both its response in opposition to
Plaintiffs' motion for partial summary judgment (Doc. # 27)
and its own motion for summary judgment. (Doc. # 28).
Plaintiffs filed a response in opposition to Defendant's
motion for summary judgment on July 17, 2008. (Doc. # 38).
On August 21, 2008, with leave of this Court, Defendant
filed a reply to Plaintiffs' response to Defendant's motion
for summary judgment. (Doc. # 43).

On December 31, 2008, this Court entered an order granting Plaintiffs' unopposed motion to bifurcate trial and setting oral argument on the pending motions for summary judgment. (Doc. ## 49, 51). Thereafter, on January 15, 2009, this Court held oral argument on the summary judgment motions. (Doc. # 54). For the reasons that follow, this Court grants Defendant's motion for summary judgment (Doc. # 28) and denies Plaintiffs' motion for summary judgment. (Doc. # 21).

## I.  Undisputed Facts

Plaintiffs, Johnny Word along with his wife and minor children, sue Defendant Illinois Union Insurance Company for insurance benefits under Illinois Union policy # XSAHO784123. Mr. Word was employed as a truck driver by CTL Distribution, Inc., a subsidiary of Comcar Industries, Inc. (Word Aff. Doc. # 22 at ¶ 1). The Word family resides in Florida, and Illinois Union is incorporated in Illinois. (Doc. # 1 at ¶ 7).

On August 21, 2004, while driving a truck owned by his employer, Mr. Word was involved in a motor vehicle accident. (Word Aff. Doc. # 22 at ¶ 1). The accident was caused by Alberio Mejia, an underinsured motorist. (Id.). Mr. Word

was injured in the accident. (Id. at ¶ 3-5). Mr. Word asserts that he has incurred medical bills of approximately $175,000 and asserts that he sustained permanent, disabling injuries. (Id. at ¶ 4-5).

Mr. Mejia was insured for $100,000, and Mr. Mejia's insurance company paid that amount to Mr. Word. (Doc. # 1 at ¶ 8; Zohar Aff. Doc. # 52 at ¶ 1). On December 29, 2004, the Words' counsel sent correspondence to Crawford & Co. claims adjusters inquiring about underinsured motorist coverage under CTL and/or Comcar's insurance policy. (Id. at ¶ 3). The Words' counsel received no response from the claims adjusters, and therefore, the Words' counsel began corresponding directly with ACE Group, the owner of Illinois Union Insurance Company.

A representative of ACE Group, Robert McCullogh, notified the Words' counsel that "Johnny Word was covered for underinsured motorist coverage for this accident under the policy issued to Comcar Industries up to the sum of $2,000,000 (equal to the liability limit of the policy)." (Id. at ¶ 4). On September 14, 2005, Mr. McCullogh faxed to the Words' counsel a copy of policy # XSAHO7841723 containing "Endorsement # 4 a Florida election of UM non-

stacked coverage." (<u>Id.</u> at ¶ 5).

However, on January 4, 2006, Thomas R. Lowe, risk manager for Comcar, authored a letter to the Words' counsel indicating that Comcar rejected underinsured motorist coverage. (<u>Id.</u> at ¶ 6).

It cannot be disputed that the policy in question is policy # XSAHO7841723, with an effective date of November 1, 2003, through November 1, 2004. Comcar purchased the policy with the assistance of Keystone Risk Partners of Pennsylvania. (Hauner Dep. Doc. # 33 at 20:4-9). Keystone offered the policy to the predecessor insurer, American International Group (AIG) as well as to ACE Group (Burks Dep. Doc. # 30 at 45:12-15; Lewis Dep. Doc. # 31 at 24:17-20). Mr. Lowe chose ACE Group, and he executed a written rejection of underinsured motorist insurance coverage on October 23, 2003. (Lowe Dep. Doc. # 29 at 8:7-24).[1] Mr. Lowe provided the rejection form to Keystone. However,

---

[1] The record contains deposition testimony from Mr. Lowe indicating that he signed a written underinsured motorist coverage rejection form two times prior to the accident: first on October 23, 2003, and then on August 12, 2004. (Lowe Dep. Doc. # 29 at 9:1-25; 82:6-25; 83:1-25). Plaintiffs do not dispute that Mr. Lowe signed the form on October 23, 2003; however, Plaintiffs do not agree that Mr. Lowe signed the rejection form on August 12, 2004.

Keystone did not deliver the rejection form to ACE Group until after Mr. Word's accident.

The parties have filed various versions and excerpts of the policy in question. For instance, in support of their motion for summary judgment, Plaintiffs filed as exhibit six to their motion for summary judgment "Parts of Policy # XSA HO 7841723." (Doc. # 21-5 at 2-48). However, in each and every version of the policy on file, the policy is titled "excess truckers liability policy" and on the declaration page of the policy, it states that the insurer will indemnify the insured for loss from bodily injury liability up to a sum certain over a "retained limit." (Doc. # 21-5 at 1-48).

During her deposition, Robin Hauner, as the corporate representative of Illinois Union testified that the policy is an excess insurance policy because "it applies in excess of a self-insured retention." (Hauner Dep. Doc. # 33 at 44:16-19). She further explained, "If the claim is covered, a payment has to be greater than three million for our policy to respond." (Id. at 46:3-25).

Section II of the policy titled Liability Coverage

states, "We will pay the insured for the ultimate net loss in excess of the retained limit . . . that the insured must legally pay as damages because of bodily injury . . . to which this policy applies caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (Doc. # 21-5 at 13).

After the accident, Mr. Word demanded that Illinois Union "tender and pay its full [policy] limit of $2,000,000 underinsured coverage" and Illinois Union refused. Thereafter, on August 8, 2007, the Words filed suit against Illinois Union in Circuit Court in and for Hillsborough County, Florida, seeking underinsured motorist insurance benefits for Mr. Word. (Doc. # 2).

Illinois Union filed their answer and affirmative defenses in state court on August 24, 2007, asserting twelve affirmative defenses. (Doc. # 3).

## II.  **Summary Judgment Proceedings**

Plaintiffs filed their motion for partial summary judgment (Doc. # 21) on June 25, 2008, and Defendant filed its motion for summary judgment (Doc. # 28) on July 11, 2008.  These motions pertain to insurance coverage issues

only, and do not discuss liability and damages.  Illinois
Union seeks a summary judgment finding that Mr. Word is not
covered under the applicable policy and Mr. Word seeks a
summary judgment finding that he is covered.

After due consideration, this Court grants Defendant's
motion for summary judgment and denies Plaintiffs' motion
for summary judgment because this Court finds that the
policy in question was an excess policy, rather than a
primary policy.  In addition, this Court finds that Mr.
Lowe's rejection of underinsured motorist coverage was
legally sufficient.

### A.   Legal Standard

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  A factual dispute alone is not enough
to defeat a properly pled motion for summary judgment; only
the existence of a genuine issue of material fact will
preclude a grant of summary judgment.  Anderson v. Liberty

<u>Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996)(citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**B.  Florida Insurance Law**

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Apps., Inc. v. United States Fid. & Guar. Co.,

157 F.3d 843, 844 (11th Cir. 1998). Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it. Brown v. Nicholas, 8 F.3d 770, 773 (11th Cir. 1993).

In the present case, both parties agree that Florida insurance law governs the issues before the Court. Under Florida law, the interpretation of an insurance contract is a matter of law to be decided by the court. Gas Kwick, Inc. v. United Pac. Inc. Co., 58 F.3d 1536, 1539 (11th Cir. 1995). Courts must construe an insurance contract in its entirety, striving to give every provision meaning and effect. Id. (citing Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1382 (11th Cir. 1993)).

### 1. Florida's UIM Statute

The resolution of this case requires a detailed discussion of Florida Statute Section 627.727, titled "motor vehicle insurance; uninsured and underinsured vehicle coverage; insolvent insurer protection" (hereafter, the "UIM Statute" or "UM Statute"). Subsection one of the UIM Statute states in pertinent part that UIM insurance may be rejected:

No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.

Fla. Stat. § 627.727(1).

Subsection two of Florida Statute Section 627.727 explains:

The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle.

Fla. Stat. § 627.727(2).

Thus, in Florida, UIM coverage in an amount equal to the bodily injury policy limit is automatically included in primary insurance policies by operation of law unless such

coverage is specifically rejected by the insured.

## 2. **Florida's Public Policy**

The aforementioned statute has been interpreted and discussed by the Florida Supreme Court as follows:

> UM coverage . . . is intended to protect persons who are injured as a result of negligence by uninsured motorists. . . . [U]nderinsured motorist coverage is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law. . . . The Legislature wisely enacted a scheme whereby a motorist may obtain a limited form of insurance coverage for the uninsured motorist, by requiring that every insurer doing business in this state offer and make available to its automobile liability policyholders UM coverage in an amount equal to the policyholder's automobile liability insurance. The policyholder pays an additional premium for such coverage. More recently, this Court again emphasized that the reason insurers are statutorily required to offer UM coverage to the insured is to protect individuals who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.

Flores v. Allstate Ins. Co., 819 So. 2d 740, 745 (Fla. 2002)(citations omitted)(quotations omitted).

Furthermore, the Florida Supreme Court explained in Salas v. Liberty Mutual Fire Insurance Co., 272 So. 2d 1 (Fla. 1972):

-12-

> [T]he intention of the Legislature, as mirrored by
> the decisions of this Court, is plain[:] to
> provide for the broad protection of the citizens
> of this State against uninsured motorists. As a
> creature of statute rather than a matter for
> contemplation of the parties in creating insurance
> policies, the uninsured motorist protection is not
> susceptible to the attempts of the insurer to
> limit or negate that protection.

Id. at 5. In addition, the Florida Supreme Court has warned that "[b]ecause the uninsured motorist statute was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist; it is not to be whittled away by exclusions and exceptions." Young v. Progressive S.E. Ins. Co., 753 So. 2d 80, 83 (Fla. 2000).

In this case, the insurance company seeks to avoid paying benefits, therefore, this Court must "carefully scrutinize" Illinois Union's position and determine whether denial of coverage "would be contrary to the purpose of the uninusred motorist statute." Flores, 819 So. 2d at 745.


### III. **Analysis**

#### A. **Excess Policy**

Defendants assert that the policy is an excess policy, rather than a primary policy, and therefore, Florida's UIM

Statute does not apply. Plaintiffs, on the other hand, argue that self-insurance is not primary insurance, and therefore, Defendant's policy (although labeled excess) is a primary policy because it is the first layer of actual insurance. In support of their arguments, Plaintiffs rely upon S.E. Title Insurance Co. v. Collins, 226 So. 2d 247 (Fla. 4th DCA 1969); Government Employees Ins. Co. v. Wilder, 546 So. 2d 12 (Fla. 3rd DCA 1989); and Royal Surplus Lines v. Coachmen Indus. Inc., Case No. 3:01-cv-301-J-HTS, 2002 U.S. Dist. LEXIS 27892 (M.D. Fla. Sept. 17, 2002).

While the cases cited by Plaintiffs do discuss self-retained limits of an insured, these cases do not support the conversion of Defendant's patently excess policy into a primary policy for the purposes of compliance with Florida's UIM Statute. In the Collins case, the court rejected the argument that an employer's certificate of financial responsibility constituted insurance, and the court defined insurance as "a contract, whereby, for an adequate consideration, one party undertakes to indemnify another against loss arising from certain specified contingencies or perils. Fundamentally and shortly, it is contractual

security against possible, anticipated loss. Risk is essential, and equally so, a shifting of its incidence from one to another." Id. at 248 (citations omitted). However, unlike the specific policy in the present case, the policy in question in the Collins case simply stated that the policy "shall be excess insurance over any other valid and collectible insurance." Id.

Likewise, in Wilder, the court remarked:

> As an individual self-insurer is not, for most purposes, an "insurer" under the Florida Insurance Code, see § 624.03, Fla. Stat. (1987), and as Allstate Insurance Co. v. Fowler, 480 So. 2d 1287 (Fla. 1985), dealt with the setting of priorities among insurance policies, we do not believe that the Fowler decision can reasonably be interpreted as holding that a self-insurer is to be treated as if he were an insurer for purposes of the Fowler rule.

Id. at 13. The Wilder case was not decided under facts similar to this case, and the Wilder court did not mention underinsured motorist coverage. Likewise, the Royal Surplus case, which states, "The weight of authority establishes that a retained limit does not generally convert an insured into a primary insurer" is factually distinguishable from the present case. The dispute in Royal Surplus concerned a primary insurer's claim that the insured improperly

-15-

concealed claim information from the insurer, resulting in the payment of additional funds under the policy.

Defendant correctly harmonizes Plaintiffs' cases as follows: (1) while self-insurance is not primary insurance, it does assume responsibility for the primary layer of exposure; and (2) a policy which sits above the primary layer of exposure is properly characterized as an 'excess policy.' (Doc. # 28 at 10). See Royal Surplus Lines Ins. Co. v. Delta Health Group, Inc., Case No. 3:03-cv-419-RS, 2006 WL 167565 at *7 (N.D Fla. Jan. 23, 2006), aff'd, 243 F. App'x 551 (11th Cir. 2007)(for purposes of triggering an umbrella policy, an SIR was, in essence, another layer that required exhaustion prior to triggering the umbrella policy: "It is of no consequence that the SIR is not provided by an insurance company, per se.")

Under the facts of the present case, this Court is not willing to convert the policy into something that it was not intended to be by the contracting parties. This Court finds in favor of Illinois Union and grants its motion for summary judgment. The policy in question was titled as an excess policy, and in addition to its "label," it operates as an

excess insurance policy. The policy was not triggered unless or until the exhaustion of Comcar's three million dollar self-retained limit.

**B.   UIM Rejection**

Even if the policy could be construed as a "primary" policy, Mr. Lowe executed a valid rejection of UIM coverage and delivered it to Comcar's insurance broker, Keystone, prior to the accident. Mr. Lowe's October 23, 2003, rejection of UIM coverage was valid under Florida law, and serves as an independent ground for granting Defendant's motion for summary judgment.

This Court is aware of Florida's strong public policy favoring UIM coverage, as set forth in Flores v. Allstate Ins. Co., 819 So. 2d 740 (Fla. 2002), and similar opinions. However, this Court cannot and will not ignore the statutory provision allowing rejection of UM coverage.

Unlike Flores, where the insurer sought to deny coverage based upon the insured's fraud, the insurer in this case seeks to deny coverage because the insured, Comcar, executed a rejection of UIM coverage prior to the automobile accident. Regardless of Florida's "public policy" in favor

of coverage, the fact of the matter is that Florida's statutory scheme specifically allows "rejection" of UIM coverage.

Defendant frames the issue as follows: "whether a rejection made by the insured, forwarded to the broker, but not received by the insurer until after the loss – satisfies the requirements of § 627.727." (Doc. # 28 at 4).

This Court determines that Mr. Lowe's rejection was adequate under Florida law. Mr. Lowe's first UIM rejection form, dated October 23, 2003, is dispositive and self-proving. It was executed prior to the accident in question. It is not contested that Mr. Lowe also signed additional UIM rejection forms after the accident in question. However, these forms are not operative. Had Mr. Lowe attempted to "retroactively" reject UIM coverage for the first time at a time after the accident, as in Manchester Insurance and Indemnity Co. v. Jones, 317 So. 2d 786 (Fla. 3rd DCA 1975), the outcome of this case would be very different.[2] However,

_____

[2] In Jones, the court ruled that a rejection form signed after an accident was not effective on the date of the accident. The court determined, "The applicable statute, § 627.727, specifically provides that an insured is covered with uninsured motorist protection unless such protection has been rejected. . . In view of the fact that the rejection of uninsured motorist

the record is clear and it cannot be reasonably disputed that Mr. Lowe made his first rejection of UIM coverage before the accident.

The Words contend that "the private intentions of Thomas Lowe are meaningless" and that, should this Court rule in Illinois Union's favor "the fate of the innocent motorist [will] rest in the mental confines of a corporate risk manager who has not done what the law requires in depriving his employees of important insurance coverage." (Doc. # 38 at 4-5).

This Court agrees that Mr. Lowe's "intent" is not dispositive in this case, but his action of making a rejection of UIM coverage prior to the accident is dispositive. This Court follows the Florida Supreme Court's analysis in <u>Travelers Insurance Co. v. Quirk</u>, 583 So. 2d 1026 (Fla. 1991). In <u>Travelers</u>, as in the present case, an employee was injured while riding in a vehicle owned by his employer. <u>Id.</u> at 1027. The employee sued his employer's primary insurance company and the insurance company that

coverage was signed after the accident, it cannot be said that such rejection was effective at the time that Jones paid the deposit on the insurance policy or at the time of the accident." <u>Id.</u> at 787.

issued an umbrella policy to his employer. _Id._ Neither policy provided UIM coverage. _Id._ at 1028. In addition, the employee sued the insurance agency that obtained the two insurance policies for the employer. _Id._ The employee argued that the insurance agency failed to obtain a "knowing, written rejection of UM coverage" from the employer in accordance with Florida Statute Section 627.727. _Id._ It was undisputed that the employer never executed a written UIM rejection. Instead, the insurance agency rejected UIM coverage on behalf of the employer.

On those undisputed facts, the trial court entered summary judgment in favor of the two insurance companies and in favor of the insurance agency. _Id._ at 1028. However, the Second District Court of Appeal reversed as to the primary insurer and the insurance agency and affirmed as to the insurance company that issued the umbrella policy. _Id._

On appeal, the Florida Supreme Court adopted the Second District Court of Appeal's reasoning that "the legislature is attempting to avoid litigation over a 'knowing' rejection by placing far greater emphasis and importance upon the written rejection as a self-proving document." _Id._ at 1028.

What invalidated the UIM rejection in <u>Travelers</u> was that it was executed by an agent of the insurance agency, rather than an agent of the insured. <u>Id.</u> at 1029. Evaluating Florida Statute Section 627.727, the court explained, "For purposes of rejecting UM coverage, as a matter of law, an independent agent is the insurance company's agent, and not the insured's broker, when the relevant insurance company is one of the agent's licenced companies." <u>Id.</u> at 1029.

Plaintiffs contend that in addition to executing the rejection form, Comcar was also required to deliver the form to the insurance company. In support of their position, Plaintiffs cite that portion of the <u>Travelers</u> case which cites the Second District Court of Appeal and states, "If the underwriting filing <u>contains</u> a signed rejection, a policy can be issued without UM. If the insured fails to sign and <u>submit</u> a rejection form, the carrier can simply refuse to issue a policy without UM." <u>Id.</u> at 1028 (emphasis added). Plaintiffs also rely upon <u>Giddes v. Glens Fall Insurance Co.</u>, Case No. 2:02-cv-282-FTM-29DNF, 2003 U.S. Dist. LEXIS 25112 (M.D. Fla. May 22, 2003), for the proposition that, "[W]hen an auto insurance policy is

initially issued, the insurer must <u>obtain</u> a signed UM selection form on which the insured may reject UM benefits altogether, elect UM benefits in an amount less than the bodily injury liability limits, and elect either stacked or nonstacked UM coverage." <u>Id.</u> at *10-11 (emphasis added).

This Court recognizes that Florida courts have commented that an insurance company must "obtain" the form and that the insured must "submit" the form to the insurance company. <u>See</u> <u>Travelers</u>, 583 So. 2d at 1028; <u>Giddes</u>, 2003 U.S. Dist. LEXIS 25112 at *10-11. However, after reading these cases carefully, this Court determines that these statements were made in an effort to explain the nature of Florida's UM Statute, and such statements do not expand the requirements of the statute by their dicta.

Indeed, neither the <u>Travelers</u> case nor the <u>Giddes</u> case involved the circumstances presented here, where the insured made a UIM coverage rejection, but failed to transmit the same to the insurance company. Further, Comcar was fully aware of its options and, through its own agent, executed the UIM rejection form in an effort to effectuate its choice from among its options under Florida law.

In the present case, Comcar's agent, specifically, its risk manager, Mr. Lowe executed the rejection and sent the rejection to Comcar's broker. This transaction, which occurred prior to the accident in question, validly rejected UIM coverage for Comcar. Unfortunately, the broker did not provide the rejection form to the insurer. This break in communication resulted in Mr. Word initially receiving correspondence incorrectly conveying that he was covered. However, the fact remains that Mr. Lowe rejected UM coverage, and Florida's UM Statute requires no more.[3]

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiffs' motion for partial summary judgment (Doc. # 21) is **DENIED.**

(2)  Defendant's motion for summary judgment (Doc. # 28) is **GRANTED.**

(3)  The Clerk is directed to enter judgment in favor of

---

[3]  This Court has applied the relevant Florida Statute and has not added additional requirements into the text of the Statute. This Court will leave the task of amending the Statute, if necessary, for the appropriate governmental body: the Florida Legislature.

Defendant Illinois Union Insurance Company and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>22nd</u> day of January 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record